UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK A. BOGER,

       Plaintiff,                    CIVIL ACTION NO. 11-15526

vs.

                                         DISTRICT JUDGE AVERN COHN

COMMISSIONER OF                  MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's Motion For Summary Judgment (docket no. 9) be granted and Defendant's Motion for Summary Judgment (docket no. 11) be denied. The Commissioner's decision should be reversed and this matter should be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.   PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on April 13, 2009, alleging disability beginning September 30, 1998. (TR 92-94). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On May 17, 2011 Plaintiff appeared with counsel in Flint, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Andrew G. Sloss. (TR 23-35). At the hearing, the ALJ amended the onset of disability date to December 31, 2004, which was also Plaintiff's date last insured. (TR 27). Vocational Expert (VE) Stephanee Leech also appeared and testified at the hearing. In a June 6, 2011 decision the ALJ found that Plaintiff was not entitled to disability

benefits because he did not suffer from an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for twelve consecutive months. The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was forty-six years old on December 31, 2004, his amended date last insured, and he was fifty-three years old at the time of the administrative hearing. (TR 26-27). He completed high school and attended two years of college. (TR 26). He worked in the past as a lineman and line coordinator at General Motors Corporation. (TR 117-21). Plaintiff testified that he lives in an apartment. He has a driver's license but claims that back problems prevent him from driving long. (TR 26).

Plaintiff testified that he stopped working in 1999 after he became eligible for total and permanent disability retirement from General Motors. He reported that he was not able to work through his date last insured because he has a bad back with a pinched nerve and two bad vertebrae, he has had seven surgeries on his shoulders, and his left shoulder has two plates and an artificial bone in it. (TR 27). He testified that the frontal lobe of his brain is shrinking following a car accident, he has migraines, restless leg syndrome, and severe anxiety and depression. (TR 28-29). Plaintiff reported that he is in a great deal of pain. He testified that he is unable to fully lift his arms overhead. He stated that he cannot push a vacuum cleaner, pick up objects, take a bath, or shop, although he is able to attend church services. (TR 28-29). Plaintiff reported that his two sons help

2

him with his needs when they visit him at his apartment. (TR 28). He testified that he takes Klonopin and Topamax and he claimed that he has difficulty sleeping.

Plaintiff testified that he spends his days sitting at home watching television. (TR 29). He reported that he has trouble sitting for long periods of time, claimed that his legs hurt if he stands too long, and stated that he is unable to walk far. (TR 29-30). Plaintiff reported that he can only lift two to three pounds at a time.

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below. The record shows that the ALJ considered whether Plaintiff was disabled between the original alleged disability onset date of September 30, 1998 and the date last insured of December 31, 2004, even though he amended Plaintiff's onset of disability date to December 31, 2004. The undersigned will discuss the medical records in a manner that is consistent with the ALJ's approach.

*1.     Medical Evidence Before The Original Alleged Onset of Disability Date, September 30, 1998*

Plaintiff was treated at the Family Orthopedic Associates from March 1993 through April 1995. (TR 163-68). He initially presented with complaints of pain and tenderness over the biceps and deltoid regions. The original impression was that he had a snapping biceps tendon. (TR 168). In June and July 1993 the medical record shows that Plaintiff had a partial rotator cuff tear of the left shoulder. (TR 161, 168). He underwent an arthroscopy of the shoulder with some debridement. (TR 168). In March 1994 it was determined that Plaintiff was a candidate for an anterior decompression of the shoulder with release of the coracol acromio ligament. (TR 166). Subsequent progress notes in March and April 1994 imply that Plaintiff had the procedure because the notes

state that his wounds and incision looked good. (TR 166). In October 1994 Dr. Pack documented that Plaintiff's therapy had actually made his condition worse and he noted that Plaintiff may have a subdeltoid bursitis. In February 1995, an examiner at the Family Orthopedic Associates noted that Plaintiff continued to have tenderness over the insertion of the deltoid and observed that his x-rays did not show much arthroscopically. (TR 164). In April 1995 an examiner noted that Plaintiff's EMG was normal. (TR 163).

2.  *Medical Evidence Between The Original Alleged Onset of Disability Date, September 30, 1998, and The Date Last Insured, December 31, 2004*

Between April and October 1999 Dr. Wallace Gasiewicz completed Supplementary Reports of Claim for Sickness and Accident Benefits Under the General Motors Life and Disability Benefits Program. (TR 464, 466-69). Dr. Gasiewicz opined that Plaintiff was totally disabled from work from approximately April 7, 1999 through November 12, 2000. On June 30, 1999 Dr. Barbara Chapman completed an identical form indicating that Plaintiff had extremely painful rotator cuff despite normal x-rays. Dr. Chapman opined that Plaintiff had recovered sufficiently to return to work as of June 11, 1999 with a restriction of no work above shoulder height. (TR 465).

On January 16, 2002 Plaintiff returned to the Family Orthopedic Associates and presented to Dr. John Yap, an orthopedic surgeon, with complaints of persistent right shoulder pain spanning an eight month period with catching and popping in the right shoulder. (TR 161-62). Dr. Yap noted that Plaintiff underwent a right shoulder arthroscopy in 1999. Dr. Yap reviewed Plaintiff's history of left shoulder rotator cuff repair in 1994 and noted that Plaintiff's left shoulder continued to bother him. On physical examination Plaintiff had a normal cervical spine motion, full forward elevation and abduction of his shoulders, no weakness with resisted abduction or external rotation, with positive Neer and Hawkins impingement tests. Dr. Yap observed that Plaintiff was neurologically

intact in all dermatomes and myotomes. The doctor diagnosed Plaintiff with impingement syndrome of the right shoulder and AC joint osteoarthritis. The progress note states that Plaintiff did not want any type of surgery at the time. Dr. Yap gave Plaintiff an injection and recommended that he continue with work-related activities as tolerated.

3.     *Medical Evidence After The Date Last Insured, December 31, 2004*

"Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 Fed. Appx. 841, 845 (6th Cir. 2004) (citation omitted). "Record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence relates back to the claimant's limitations prior to the date last insured." *Abney v. Comm'r,* No. 507-394, 2008 WL 2074011 at *6 (E.D. Ky. May 13, 2008) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) (medical evidence after date last insured was only minimally probative of claimant's condition before date last insured, so did not affect disability determination).

Plaintiff returned to Dr. Yap in December 2006 after a four year absence with complaints of bilateral shoulder pain and discomfort. (TR 160). Dr. Yap noted that Plaintiff had undergone bilateral shoulder rotator cuff repairs and opined that the rotator cuffs were once again torn. On physical examination Plaintiff had a normal head and neck range of motion, but he had quite a bit of pain with shoulder range of motion testing and profound weakness to resisted abduction on external rotation. The doctor noted that Plaintiff had just a hint of osteoarthritis in each shoulder. The doctor diagnosed Plaintiff with bilateral rotator cuff tears and advancing osteoarthritis of the bilateral shoulders. He opined that Plaintiff would probably require shoulder replacements in the future but opted to treat Plaintiff with injection therapy for the time being.

Plaintiff received shoulder cortisone injections and lumbar epidural steroid injections in 2007 to treat low back and leg pain. (TR 252-98). An MRI of the lumbar spine dated August 13, 2007 was negative, although a subsequent report dated February 2009 showed age-related degenerative changes of the lumbar spine without evidence for central canal stenosis or a focal lumbar disc herniation. (TR 242, 251). An MRI of the left and right shoulders dated September 16, 2008 reported that Plaintiff had five surgical interventions of the left shoulder and revealed postoperative and degenerative changes with impingement of the bilateral shoulders. (TR 185-86).

Dr. Yap treated Plaintiff on four occasions between September 11, 2008 and October 30, 2008. (TR 156-59). Plaintiff presented with complaints of bilateral shoulder pain and discomfort and he sought information on surgery for his left shoulder. On physical examination Plaintiff had pain and weakness throughout the arc of motion and reduced forward flexion. (TR 159). The doctor noted that Plaintiff's MRI revealed osteoarthritis and rotator cuff tears, with the right shoulder being worse than the left shoulder. (TR 158). Dr. Yap noted that Plaintiff's right shoulder was not repairable. The doctor provided Plaintiff with an injection in his left shoulder. In October 2008 Dr. Yap recommended Plaintiff receive a reverse total shoulder replacement. (TR 157). On October 30, 2008 Dr. Yap reported that Plaintiff's MRI scans revealed rotator cuff arthropathy with no hope of his rotator cuffs being repaired again. (TR 156). Plaintiff opted to proceed with a reverse total shoulder replacement of the right shoulder. The record does not show that Plaintiff proceeded with the surgery.

Plaintiff was treated at McLaren Wound and Specialty Center on September 16, 2008 for follow-up care of a nonhealing burn ulcer on his right leg that was caused when he was burned by a hot pipe on his motorcycle. (TR 154).

In April 2009 Dr. Ed Atty, a treating physician since December 2006, stated that it was his professional opinion that Plaintiff was not capable of performing full-time work on a regular and sustained basis. (TR 372-74). In June 2009 Plaintiff presented to the emergency room at Lapeer Regional Medical Center complaining of moderate to severe right shoulder pain apparently brought on when he lifted an air conditioning unit. (TR 408). In April 2009, Dr. K. Fram reported that Plaintiff should avoid repetitive use of the hands and wrists including pushing, pulling, twisting, and use of power tools. (TR 441).

### IV.     VOCATIONAL EXPERT TESTIMONY

The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who was able to perform unskilled light work, except that he can only occasionally reach bilaterally and can never reach bilaterally overhead; he can never climb ladders, ropes, or scaffolds; and he must avoid all exposure to hazards. (TR 33). The VE testified that the hypothetical individual could perform a reduced range of light jobs such as some reception and information clerk positions, greeter positions, and unskilled office clerk jobs, comprising approximately 7,000 jobs in the lower peninsula of Michigan. (TR 33-34).

Next, the ALJ asked the VE whether jobs would be available for an individual who, due to a combination of his medical conditions, associated pain, and psychological symptoms, was unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week, for forty hours per workweek. The VE testified that competitive full-time employment would not be available for such an individual.

### V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity during

7

the period from his original alleged onset date of September 30, 1998 through his date last insured of December 31, 2004, and suffers from the medically determinable impairments of degenerative joint disease, degenerative disc disease of the shoulders, coronary artery disease, anxiety and depression, he did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for twelve consecutive months. (TR 12-17). The ALJ concluded that because Plaintiff did not have a severe impairment or combination of impairments he was not under a disability as defined in the Social Security Act at any time through December 31, 2004, the date last insured. (TR 15-18).

## VI.  LAW AND ANALYSIS

### A.  Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff's disability claim was denied at step two of the five-step sequential analysis after the ALJ concluded that Plaintiff had failed to demonstrate that he had a severe impairment. In his motion Plaintiff challenges the decision to stop the analysis at step two.

9

At step two of the sequential analysis Plaintiff was required to show that he suffered from a severe impairment. An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The Sixth Circuit court has determined that the step two requirement serves as a "de minimus" threshold hurdle in the disability process. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). The inquiry at step two functions as an "administrative convenience to screen out claims that are totally groundless" from a medical perspective. *Id.* at 863. An impairment can be considered not severe only if the impairment constitutes a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Services,* 773 F.2d 85, 90 (6th Cir. 1985) (citation and internal quotation marks omitted). "Under this standard, the question ... is whether there is substantial evidence in the record supporting the ALJ's finding that [plaintiff] has only a "slight' impairment that does not affect [his] ability to work." *Id.*

In the instant case, the ALJ considered factors set forth in 20 C.F.R. § 404.1521, which identifies "non-severe" impairments as follows:

> (a) *Non-severe impairment(s)*. An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) *Basic work activities*. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

10

20 C.F.R. § 404.1521.

In finding that Plaintiff had no severe impairments, the ALJ recognized that Plaintiff has the medically determinable impairments of degenerative joint disease, degenerative disc disease of the shoulders, coronary artery disease, anxiety and depression. (TR 14-15). With regard to his shoulder impairments, the ALJ acknowledged that Plaintiff has a history of bilateral shoulder pain attributed to degenerative joint disease along with a history of bilateral shoulder rotator cuff repairs. The ALJ reviewed an examination report completed by Dr. John Yap in January 2002. He noted that Dr. Yap found that Plaintiff exhibited normal cervical spine motion, full forward elevation and abduction of his shoulders, and no demonstrated weakness with resisted abduction or external rotation. Dr. Yap determined that Plaintiff was neurologically intact. The ALJ also noted that Dr. Yap indicated that Plaintiff was disabled and found that he had positive Neer and Hawkins testing. (TR 14, 16). The ALJ then noted that Plaintiff did not return for treatment until 2006, two years after his last insured date. The ALJ concluded that there was only minimal objective evidence of any medical condition in this case. (TR 14, 16).

In addition to the above, the ALJ discussed evidence showing that Plaintiff was treated in September 2008 for a burn on his right leg caused by the tail pipe of a motorcycle. The ALJ opined that "claimant's ability to ride a motorcycle, especially almost ten years after the alleged onset of disability, indicates that the claimant retained extensive use of his arms and shoulders for the performance of above waist level work-related activity well after the date he was last insured for disability insurance benefits." (TR 14-15). The ALJ discussed the fact that Plaintiff was receiving disability retirement from General Motors, but found that Plaintiff was not a credible witness on his own behalf. (TR 16). In his discussion of Plaintiff's credibility, the ALJ acknowledged that

Plaintiff testified that he cannot lift his arms to shoulder level and he complained of significant ongoing pain symptoms, but concluded nonetheless that the medical evidence "indicates that the claimant is able to ride a motorcycle as recently as 2008, which would necessarily involve extensive use of the arms and shoulders above waist level." (TR 16).

The undersigned finds that the ALJ erred in denying benefits at step two of the five-step sequential analysis. The ALJ placed a significant amount of emphasis on the fact that Plaintiff rode a motorcycle as recently as 2008. However, the evidence does not establish this fact. The record demonstrates that Plaintiff was treated at McLaren Wound and Specialty Center in September 2008 for a nonhealing burn ulcer on his right leg that was caused when he was burned by a hot pipe on his motorcycle. (TR 154). When he was questioned during the administrative hearing about the burn, Plaintiff responded that he owned a motorcycle at one time but he no longer has one that he rides. (TR 30-31). Plaintiff was not directly asked whether he was actually riding the motorcycle at or near the time he was burned.

Contrary to the ALJ's findings, the evidence does not establish that Plaintiff rode a motorcycle as recently as 2008. It only goes to show that he was in close enough proximity to a motorcycle to be burned by the tail pipe. Consequently, the ALJ's conclusion that Plaintiff retained extensive use of his arms and shoulders for the performance of above waist level work-related activity well after the date he was last insured for disability insurance benefits was made in error. The ALJ also erred in discrediting Plaintiff's testimony based on his assessment that Plaintiff could ride a motorcycle.

As previously discussed, the ALJ reviewed the record and considered evidence both supporting and discrediting Plaintiff's claim of severe shoulder impairment. The ALJ discussed

evidence showing that Plaintiff had a normal cervical spine motion, full forward elevation and abduction of his shoulders, no weakness with resisted abduction or external rotation, and he was neurologically intact. However, the ALJ also recognized that Plaintiff had a history of bilateral shoulder pain and bilateral rotator cuff repairs in the past and he was presently receiving a disability pension from General Motors. He further recognized that Plaintiff had positive Neer and Hawkins tests and he had a medical report stating that he was disabled from work due to shoulder pain. Finally, the ALJ recognized that Plaintiff testified that he had significant ongoing pain issues involving his shoulders and he could not lift his arms to shoulder level. After reviewing the evidence, the ALJ concluded that Plaintiff did not have a severe impairment.

The evidence appears to demonstrate that Plaintiff had a severe impairment of his bilateral shoulders sufficient to satisfy the *de minimus* hurdle posed by step two of the sequential analysis. In the undersigned's opinion, this case is not one of the exceptional cases that presents a totally groundless claim from a medical standpoint. Whether or not Plaintiff's severe shoulder impairment is disabling remains to be seen and can only be determined upon a more complete assessment of the five-step sequential analysis.

The undersigned recommends that the Commissioner's decision be reversed and this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration of the five-step sequential analysis.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 7, 2013        s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 7, 2013        s/ Lisa C. Bartlett
                               Case Manager

14